UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

In re Petition of Frescati Shipping Company, ) 
Ltd., as owner of the M/T ATHOS I and ) Civil Action No. **05-cv-305**
TSAKOS SHIPPING & TRADING, S.A., as )
Manager of the ATHOS I for Exoneration from )
Or Limitation of Liability )
                                                                              )

## PLAINTIFFS' THIRD AMENDED COUNTERCLAIM AGAINST CITGO ASPHALT REFINING COMPANY, CITGO EAST COAST OIL COMPANY, AND CITGO PETROLEUM CORPORATION

Plaintiffs by their attorneys Montgomery, McCracken, Walker & Rhoads, LLP, for a Third Amended Counterclaim to add a count for breach of contract, failure to pay general average expenditures and in support thereof allege on information and belief as follows:

### COUNT XIV

116.  Citgo Asphalt Refining Company is a partnership organized and existing under the laws of New Jersey.

117.  Citgo Petroleum Corporation and Citgo East Coast Oil Company are the general partners in CARCO (Hereinafter with CARCO collectively called "Citgo Entities") with their principal place of business in Houston, Texas. The general partners are liable for the partnership's acts, omissions and breaches of contract.

118.  Plaintiffs incorporate by reference paragraphs 1-117 of their Second Amended Counterclaim.

119. On November 12, 2004 CARCO and Star Tankers, Inc. the time chartered owners of the M/T ATHOS I entered a voyage charter. The charter between Star Tankers, Inc. and plaintiffs is incorporated herein by reference.

120. The subcharter between CARCO and Star Tankers, a true copy of which is attached to the Amended Counterclaim as Exhibit B required:

> 20. ISSUANCE AND TERMS OF BILL OF LADING
>
> (a) The Master shall, upon request, sign Bills of Lading in the form appearing below for all cargo shipped but without prejudice to the rights of the Owner and Charterer under the terms of this Charter. The Master shall not be required to sign Bills of Lading for any port which, the Vessel cannot enter, remain at and leave in safety and always afloat nor for any blockaded port.
>
> (b) The carriage of cargo under this Charter Party and under all Bills of Lading issued for the cargo shall be subject to the statutory provisions and other terms set forth or specified in sub-paragraphs (i) through (vii) of this clause and such terms shall be incorporated verbatim or e deemed incorporated by the reference in any such Bill of Lading. In such sub-paragraphs and in any Act referred to therein, the word "carrier" shall include the Owner and the Chartered Owner of the vessel.
>
> (i) CLAUSE PARAMOUNT. This Bill of Lading shall have effect subject to the provisions of the Carriage of Goods by Sea Acts of the United States, approved April 16, 1936, except that if the Bill of Lading is issued at a place where any other Act, ordinance or legislation gives statutory effect to the International Convention for the Unification of Certain Rules relating to Bills of Lading at Brussels, August 1924, then this Bill of Lading shall have effect, subject to the provisions of such Act, ordinance or legislation. The applicable Act, ordinance or legislation (hereinafter called the "Act") shall be deemed to be incorporated herein and nothing herein contained shall be deemed surrender by the Owner of any of its rights or immunities or an increase of any of its responsibilities or liabilities under the Act. If any term of this Bill of Lading be repugnant to the Act to any extent, such term shall be void to the extent but no further. Any of its responsibilities or liabilities under the Act. If any term of this Bill of Lading be repugnant to the Act to any extent, such term shall be void to the extent but no further.
>
> (ii) JASON CLAUSE. In the event of accident, danger or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the Owner is not responsible, by statute, contract or otherwise, the cargo shippers,

consignees or owners of the cargo shall contribute with the Owner in General Average to the payment of any sacrifices, losses or expenses of a General Average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the cargo. If a salving ship is owned or operated by the Owner, salvage shall be paid for as fully as if the said salving ship or ships belonged to strangers. Such deposit as the Owner or his agents may deem sufficient to cover the estimated contribution of the cargo and any salvage and special charges thereon shall, if required, be made by the cargo shippers, consignees or owners of the cargo to the carrier before delivery."

\*\*

121. Under paragraph 20 of the subcharter "the master shall, upon request sign bills of lading in the form appearing below for all cargo shipped but <u>without prejudice to the rights of the owner and charterer under the terms of this charter</u>." The parties intended that this clause benefit claimants; thus, if it is determined that the subcharter was not incorporated in the bill of lading or that claimants otherwise do not have any causes of action under the terms of the subcharter, then CARCO has breached its agreement to provide bills of lading that are without prejudice to the terms of the subcharter.

122. The form bill of lading in the subcharter requires the charter be incorporated in the bill. It provides:

"This shipment is carried under and pursuant to the terms of the contract/charter dated New York/London _____ between _____ and _____ as charterer, and the terms whatsoever of the said contract/charter except to the rate and payment of the freight specified therein govern the rights of the parties concerned in this shipment."

123. The cargo was carried pursuant to the Jason clause, above.

124. Star Tankers and CARCO intended that the subcharter be incorporated in the bill of lading and that the bill of lading serve as the contract between plaintiffs and CARCO.

In breach of the terms of the subcontract.

1204021v1

125. The bill of lading (Exh. A to the Amended Counterclaim did not expressly incorporate the subcharter, however, because it was the mutual intention of CARCO and Star Tankers to do so, the bill is deemed to incorporate the subcharter and CARCO is estopped to deny the incorporation.

126. With respect to general average the bill of lading provides in relevant part:

***

[NEW JASON CLAUSE]. In the event of accident, danger or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the Owner [sic] not have responsible, by statute, contract or otherwise, the cargo shippers, consignees or owners of the cargo shall contribute with the Owner in General Average to the payment of any sacrifices, losses or expenses of a General Average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the cargo...."

127. Alternatively, the bill of lading is plaintiffs' contract directly with CARCO and plaintiffs may sue for breach of the terms of the bill.

128. By contract and/or statute, plaintiffs are exempt from liability.

129. On November 26, 2004, the M/T ATHOS I in the circumstances described above, suffered a casualty amount to a general average event and necessitated certain expenditures in order that the voyage as the common venture be successfully completed.

130. Because plaintiffs made necessary expenditures, the voyage was successfully completed on or about December 10, 2004.

131. Plaintiffs have duly performed all actions required of them under the contract of carriage entitling them to General Average contributions.

132. Poseidon Average Adjusters. (New York) Ltd. prepared a General Average Statement, which is incorporated herein by reference. The Adjusters determined that CARCO's

1204021v1

contribution accounts to $246,684 as of June 27, 2004, the date the adjustment was published and the demand for payment made.

133.   Subsequent to the demand for payment of June 27, 2004, CARCO has refused to pay its share of General Average.

WHEREFORE, Plaintiffs demand judgment against CARCO in the amount of $246,684 together with interest, costs, counsel fees and such other and further relief as the Court deems just in the circumstances.

Date: 1/19/06

_____
Alfred J. Kuffler (AK868)
MONTGOMERY, MCCRACKEN, WALKER &
RHOADS, LLP
123 South Broad Street
Philadelphia, PA 19109
(215) 772-1500
Attorneys for Plaintiff Tsakos Shipping and
Trading, S.A., Frescati Shipping Company, Ltd.

1204021v1